UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| DANNY CLAYTON WHITE, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| vs. | ) | Case No. 1:10CV00104 SNLJ |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This case is a motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence by Danny Clayton White, a person in federal custody. On April 29, 2009, White plead guilty before this Court to the offense of possession of child pornography, and on July 9, 2009, this Court sentenced White to the Bureau of Prisons for a term of 120 months, the statutory maximum for the offense. White's § 2255 action, which is based on several allegations of ineffective assistance of counsel, is fully briefed and ripe for disposition.

I.  FACTS AND PROCEDURAL BACKGROUND

On September 17, 2008, Sikeston, Missouri Police officers were contacted by a State Probation Officer concerning a report of child pornography found on a computer used by the Movant Danny Clayton White. (PSR, ¶ 7) White's mother, Linda Helm, had found images of child pornography on a computer to which only she and White had access. (PSR ¶8) At that time White was residing with his mother. (PSR, ¶7)

On January 20, 2009, Officers requested that White meet with them for an interview and White consented to the meeting. (PSR, ¶10) After White failed to show up as agreed, officers made contact with him at the home of his sister, where he was residing at the time. *Id*. White

agreed to accompany the officers back to the police station for purposes of the interview. *Id*. Once at the police station, White admitted that he was the person responsible for the child pornography on the computer. (Plea Stip ¶4 and PSR, ¶10) White stated that he used the computer to find child pornography on the Internet and that he used a file sharing program called Frostwire to download child pornography. *Id*. White estimated that he looked at 200-300 pictures of what he described as 10 and 11 year old girls having sex, and admitted that he had knowingly saved the video files on the computers hard drive. *Id*. White also admitted that the images depict real children. (Plea Stip ¶4 and PSR, ¶11)

At the conclusion of the interview, White told the officers that he had taken an overdose of 90 tablets of a prescription pain reliever called Tramadol. (PSR ¶10) The officers noted that White appeared of sound judgment and exhibited no signs of the overdose during the interview. *Id*. White was then transported to the hospital for treatment. *Id*.

Forensic analysis of the hard drive revealed that White possessed more than 600 image files (including more than 65 video files) of child pornography, that is images of minors engaged in sexually explicit conduct. (Plea Stip ¶4 and PSR ¶11) Some of the images contained sadistic or masochistic conduct and children under the age of twelve. *Id*. For example, more than one image involved the sexual penetration of prepubescent girls by an adult male penis, as well as images of prepubescent girls performing fellatio on adult males. *Id*.

On March 5, 2008, White was indicted by a Federal Grand Jury sitting in Cape Girardeau, Missouri for one count of Possession of Child Pornography in violation of Title 18 United States Code, §2252A(a)(5). (Document 1, 1:09 CR 52 SNLJ) On April 2, 2009, White appeared in person with his attorney before United States Magistrate Judge Lewis M. Blanton

and waived his right to file pretrial motions. (Document 21, 1:09 CR 52 SNLJ) The Magistrate Judge found that White had been advised of his right to file motions and the right to have an evidentiary hearing, and that White knowingly and voluntarily waived his right to file or proceed on pretrial motions and to have a hearing. (Document 22, 1:09 CR 52 SNLJ)

On April 29, 2009, White pled guilty as charged pursuant to a written plea stipulation and agreement with the government. (Document 24, 1:09 CR 52 SNLJ)(Plea Stip) The Presentence Report recommended a total offense level of 33, which was consistent with the parties recommendations. (PSR, ¶31 and Plea Stip ¶3.E.) White's countable convictions include: felony damage to property (PSR ¶49), receiving stolen property (PSR ¶53), and a misdemeanor domestic assault which he committed against his mother (PSR ¶57). White also has convictions that were too old to count for driving while intoxicated, driving while revoked, misdemeanor assault, and misdemeanor property damage. (PSR ¶¶34, 37, 40, 43) White received an additional two criminal history points as he was on probation at the time of the instant offense. (PSR ¶ 64) White's criminal history was determined to be a category III as a result of five criminal history points. (PSR ¶ 65) With a total offense level of 33 and a criminal history category of III, the advisory guidelines range was determined to be 168 to 210 months incarceration. (PSR ¶ 90) The statutory maximum sentence for this offense, however, is only 120 months. *Id*.

On July 8, 2009, White objected to the Presentence Report on the grounds that he could not recall one of the misdemeanor convictions for which no points were assessed, that the date listed for one of his marriages was incorrect, and that the underlying facts of the domestic battery conviction for the offense against his mother was misleading. (Document 28, 1:09 CR 52 SNLJ)

White did not object to any of the facts related in the offense conduct portion of the report. *Id*.

White was sentenced on July 9, 2009, and when asked by the Court, his attorney indicated that they did not have any objections to the factual findings in the Presentence Report. (TRS p. 15) After argument was heard, this Court sentenced White to be imprisoned for 120 months in the Federal Bureau of Prisons, plus supervised release for life upon his release from custody. (Document 31, 1:09 CR 52 SNLJ)

II.  NEED FOR EVIDENTIARY HEARING AND BURDEN OF PROOF

28 U.S.C. §2255 provides, in pertinent part:

> Unless the motion and the files and records of the case conclusively show that the prisoner is not entitled to relief, the court shall . . . grant a prompt hearing thereon. Rule 4(b) of the Rules Governing §2255 Proceedings for the United States District.

Court states:

> The motion, together with all the files, records, transcripts, and correspondence relating to the judgment under attack, shall be examined promptly by the judge to whom it is assigned. If it plainly appears from the face of the motion and any annexed exhibits in the prior proceedings in the case that the movant is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the movant to be notified.

When a petition is brought under §2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. In determining whether a petitioner is entitled to an evidentiary hearing the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self interest and characterizations, discredited inventions, or opprobrious epithets. *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is unnecessary when a §2255 motion (1) is inadequate on its face, or (2)

although facially adequate is conclusively refuted as to the alleged facts by the files and the records of the case. *Id*. at 225-6. *See also*, *United States v. Robinson*, 64 F.3d 403 (8th Cir. 1995); *Engelen v. United States*, 68 F.3d 238, 240 (8th Cir. 1995).

When all the information necessary for the court to make a decision with regard to claims raised in a §2255 motion is included in the record, there is no need for an evidentiary hearing. *Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993). An evidentiary hearing is unnecessary where the files and records conclusively show petitioner is not entitled to relief. *United States v. Schmitz*, 887 F.2d 843, 844 (8th Cir. 1989); *Dall v. United States*, 957 F.2d 571, 573 (8th Cir. 1992). Prior to requiring an evidentiary hearing, it is necessary for a petitioner to allege facts which, if true, would entitle them to the relief sought, merely stating unsupported conclusions will not suffice. *Brown v. United States*, 656 F.2d 361, 363 (8th Cir. 1981).

III. DISCUSSION

A.

In his first stated Ground for Relief, White alleges that his plea of guilty was "unlawfully induced" or "not made voluntarily or with knowledge of the charge and the consequences of the plea." (§2255 Motion, p.5) White further states that the plea was "induced with duress without counsel without representation" and avers that his attorney "did not want to fight for" him. *Id*. White failed to explain this claim within his motion, much less provide any evidence which would, if believed, tend to lend it any support. As such, this is just the type of conclusory allegation or opprobrious epithet, which the court condemned in *McGill*. In fact, the record clearly draws one to the opposite conclusion, that White was fully aware of both his rights and the possible punishment, and voluntarily pleaded guilty.

The written plea agreement and stipulation that White entered into with the government addressed the issue of the voluntariness of the plea of guilty, the promises made to him by the government and the fact that no one had forced or threatened him to induce his plea of guilty, as follows:

> This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case or the agreements, recommendations or stipulations contained herein. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty. The defendant's agreements, recommendations and stipulations as set forth above are made in exchange for the United States' agreements, recommendations and stipulations set forth in this document. The defendant acknowledges that the defendant has voluntarily entered into both this plea and these agreements, recommendations and stipulations. The defendant further acknowledges that this guilty plea is made of the defendant's own free will because the defendant is, in fact, guilty of the conduct specified in sections four and five above.

(Plea Stip, ¶ 11) (emphasis added).

Likewise, the evidence is clear that White was fully advised of the rights that he would be giving up as a result of his guilty plea. The written plea stipulation acknowledged that White understood those rights.

> The defendant acknowledges and fully understands the following rights: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pre-trial motions, including motions to suppress evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the entire case against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and crossexamine adverse witnesses; the right to testify and present evidence; and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph. The defendant fully understands that the defendant has the right to

be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding.

(Plea Stip, ¶ 8)

White's knowing waiver of his constitutional rights is also evident from the plea colloquy, wherein the following exchange occurred:

> The Court: By pleading guilty, you're giving up a number of constitutional and other rights, specifically the right to trial by jury. Are you sure you want to give up your right to a jury trial by pleading guilty?
>
> White: Yes.
>
> The Court: You understand that if we had a trial you would be presumed innocent and the government would have to prove you guilty beyond a reasonable doubt and you would not have to prove your own innocence. Do you understand that, too?
>
> White: Yes.
>
> The Court: Also, at any trial the government would have to come in to court and bring their witnesses and -- to testify in your presence and your lawyer would be allowed to cross-examine those witnesses. On the other hand, you would be allowed to present your own witnesses and tell your side of the story, take the witness stand yourself. You understand that as well, don't you?
>
> White: Yes.
>
> The Court: And also, at any trial, if we had a trial, no one could force you or make you testify against yourself. Not me, not your lawyer, not anyone. Do you understand that?
>
> White: Yes.
>
> The Court: If you decided not to testify, nothing could be said to the jury about your failure to testify. Do you understand all those rights that are part of your right to a trial by jury?
>
> White: Yes.
>
> The Court: And you're sure you want to give them up by pleading guilty?

White: Yeah.

(TRS, pp. 4-5)

The Court then inquired of White to make sure that no one had forced or threatened him in any way to get him to plead guilty. (TRS, p. 5) The Court also inquired of White to determine that he had in fact read the plea agreement and had an opportunity to go over the contents with his attorney. (TRS, pp. 5-6) The Court also made sure that White understood everything in the plea agreement and that no one had made him any promises to obtain his plea of guilty that were not set out in the agreement. (TRS, p.6)

White was also clearly aware of the possible penalties prior to his pleading guilty. The plea stipulation clearly pointed out the penalties for the offense of conviction, as follows:

> The defendant fully understands that as to Count I, the maximum possible penalty provided by law for the crime of Possession of Child Pornography to which the defendant is pleading guilty is imprisonment of not more than ten years, a fine of not more than $250,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than life.

(Plea Stip, ¶6(A))

The Court also covered the penalties during the plea colloquy.

> The Court: ...the range of punishment which for this offense, as stated on page 12 of the agreement, is not more than ten years or a fine of not more than $250,000 or combination of imprisonment and fine and, in addition, the Court may also impose a period of supervised release of not more than life. Do you understand that's the range of punishment?
>
> White: Yes.
>
> The Court: In any event, the maximum is ten years and that's apparently what you and the government have stipulated and agreed to; is that right?
>
> White: Yes.

(TRS, p. 7)

The record also reflects that White was fully aware of the nature of the charge against him and the elements of the offense. (Plea Stip ¶5 and TRS, pp. 10-11) Additionally, both the plea stipulation and the plea colloquy contained a recitation of the factual basis for the plea. (Plea Stip ¶4 and TRS, pp. 7-9) White initially had some hesitation about the facts but ultimately admitted that the factual basis was true and accurate, as indicated by the following exchange:

> The Court: Okay. Let me ask you again then. Is everything that the prosecutor said true and accurate or –
>
> White: Yes.
>
> The Court: You hesitated earlier. Are you sure about this now?
>
> White: Yes.
>
> The Court: Do you admit then that you committed all those acts that you described?
>
> White: Yes.
>
> The Court: No question about it?
>
> White: No.

(TRS, p. 10)

The United States Constitution insists that a defendant enter a guilty plea that is voluntary, and with sufficient awareness of the relevant circumstances and likely consequences. *United States v. Ruiz*, 122 S.Ct. 2450, 2455 (2002). To be voluntary, a plea must be knowingly and intelligently made, and a plea is not intelligently made unless the defendant first receives real notice of the true nature of the charge against him and correctly understands the essential

elements of the crime. *United States v. Morgan*, 230 F.3d 1067, 1070-1071 (8th Cir. 2000).

White has provided no evidence that he was coerced into pleading guilty, or that his plea of guilty was involuntary. The record of the case, however, clearly establishes that White was well aware of both his constitutional rights and the possible penalties, and that he voluntarily waived those rights and pleaded guilty. Given the fact that the record clearly shows that White's contention is without merit, this ground shall be dismissed without the necessity of an evidentiary hearing.

B.

In ground two, White claims that his conviction was obtained by use of a coerced confession. White states concerning this claim:

> Medical evaluation and statement of physical conditions at the time the statement was taken, with mind altering substances with the fact violations of my due process not being allowed to exercise my rights of due process.

(§2255 Motion, p. 5)

White has waived his ability to pursue this claim as a part of his plea agreement with the government. The written plea agreement contains, in part, a provision that:

> both the defendant and the Government hereby waive all rights to appeal all nonjurisdictional issues including, but not limited to any issues relating to pre-trial motions, hearings and discovery and any issues relating to the negotiation, taking or acceptance of the guilty plea or the factual basis for the plea.

(Plea Stip, ¶ 2.C.(1)(a))

In addition, White specifically waived his right to contest the conviction in a post conviction motion, in the following provision:

> the defendant further agrees to waive all rights to contest the conviction or sentence, in any post-conviction proceeding, including, but not limited to, a

>motion brought under 18 U.S.C. §3582, 28 U.S.C. §§2241, 2255, and Rule 60(b) Fed. R. Civ. P. or by means of any other petition for relief of any description.

(Plea Stip, ¶2.C.(2))

As shown above, White knowingly and intelligently entered a plea of guilty. White also knowingly and intelligently entered into the waiver of his right to challenge the sentence on appeal, or in a post-conviction proceeding. During the change of plea hearing, the Court specifically asked White if he understood that he was giving up the right to challenge any issue on appeal except the actual sentence itself and White affirmed that he understood. (TRS, p. 6)

Negotiated waivers of appellate rights and rights to pursue post-conviction relief have been routinely upheld by the Eighth Circuit. *See United States v. Rutan,* 956 F.2d 827, 829 (8th Cir. 1992) (waiver of the right to appeal a sentence contained in a plea agreement is enforceable)*; United States v. His Law*, 85 F.3d 379 (8th Cir. 1996). In *DeRoo v. United States*, 223 F.3d 919 (8th Cir. 2000), DeRoo pleaded guilty pursuant to the terms of a plea agreement providing that DeRoo waived any right to appeal the judgment and sentence and a waiver of all rights to contest his conviction or sentence in any post-conviction proceeding pursuant to 28 U.S.C. §2255. After being sentenced, however, DeRoo filed a motion under 28 U.S.C. §2255 to vacate, set aside, or correct his sentence, claiming that he had been denied effective assistance of counsel on various grounds. In addressing the government's claim that DeRoo had waived his right to file a motion for post-conviction relief under §2255, the Eighth Circuit noted that, "[a]s a general rule, we see no reason to distinguish the enforceability of a waiver of direct-appeal rights from a waiver of collateral-attack rights in the plea agreement context." *Id*. at 923.

The chief virtues of a plea agreement of speed, economy, and finality "are promoted by

waivers of collateral appeal rights as much as by waivers of direct appeal rights. Waivers preserve the finality of judgments and sentences, and are of value to the accused to gain concessions from the government." *Id*. However, "the decision to be bound by the provisions of the plea agreement, including the waiver provisions, must be knowing and voluntary." *Id*., citing *United States v. Morrison*, 171 F.3d 567, 568 (8th Cir. 1999).

The Eighth Circuit has determined that a waiver of a right to appeal is enforceable (1) if knowingly and voluntarily made, and (2) if the sentence imposed is in accordance with the negotiated agreement. *Rutan*, 956 F.2d at 829. To be effective, Movant need not know with certainty what his sentence might be at the time of the waiver. *Id.* at 830. ("While Rutan might not have known the exact dimension of the sentence, he knew he had a right to appeal his sentence and that he was giving up that right.")

Independent of the waivers contained in the written plea stipulation, White, as a matter of law, has waived his right to contest his conviction based on a violation of his constitutional rights which is alleged to have occurred prior to the entry of his plea of guilty herein:

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 266 (1973), 93 S.Ct. 1602, 1608.

Nor is White's allegation in this ground supported by the facts of the case. Once again, White fails to produce any evidence concerning this claim, other than what purports to be some medical records relating to his emergency room visit, which occurred at some time after the interview in which he confessed to the crime charged. These records, even if accurate, indicate

-12-

nothing concerning what White's condition would have been at the time of the interview with the police. White may well have been incapacitated by the time he was seen by the emergency room doctor, but it does not necessarily follow that he was under the influence of the drugs at the time of the interview. Furthermore, the fact White had taken the pills was information that was before this Court at the time of sentencing, as it was included in the PSR. *See*, PSR ¶10.

White deliberately overdosed on prescription pain killers in the form of tablets. (PSR ¶10) It is common knowledge that the onset of the effects of any drug is highly dependent upon a number of factors, including the characteristics and dosage of the drug, the route of its administration, and the individual's tolerance to that particular drug, or class of drugs. For instance, in this situation, onset of the effects of the drugs, taken orally, could easily be dependent upon factors like, White's tolerance to the drugs, what else, if anything that he may have had in his stomach and whether the drugs were designed to absorb into a person's system all at once, or slowly over a period of hours.

White's contention also runs contrary to the admitted facts in the case. The offense conduct section of the Presentence Report, indicates that the overdose occurred, but reports that according to the officers, White "appeared to be of sound judgement and exhibited no obvious signs of the overdose during the interview." (PSR, ¶10) Although White reviewed the Presentence Report and lodged several objections to it, the factual account of the circumstances surrounding his overdose and confession was never contested. (Document 28, 1:09 CR 52 SNLJ, TRS, pp. 13-15)

That White was suffering no significant effects of the overdose during the interview is accepted as fact by the Court. *See, United States v. Sorrells*, 432 F.3d. 836, 838 (8th

Cir. 2005) (A sentencing court may accept the facts in a PSR as true unless the defendant objects to specific factual allegations.) *See also*, *United States v. Smith*, 635 F.2d 693 (8th Cir. 1980)(A district court does not err in peremptorily disposing of a claim on a petition for post conviction relief that the presentence report contained erroneous information where the defendant admitted that he had seen the report and had no comment concerning its contents.)

In conclusion, this claim is simply without merit, and White has waived all ability to pursue it at this point based on the waiver provisions in the plea agreement. The record clearly indicates that there is no basis for relief and this ground shall therefore be dismissed without the necessity of holding an evidentiary hearing.

C.

In ground three, White alleges that his conviction was obtained by violation of his "privilege against self incrimination" and "speedy trial rights." White elaborates on this to some degree in his §2255 Motion where he says:

> Did formal request to exercise 5th Amendment right, and was never allowed to exercise fast and speedy trial rights when in fact expofacto (*sic*) an illegal convictions or a guilty plea must be presented to a judge and state attorney medical records was not obtained for this case, at all. The statement should of been suppressed.

(§2255 Motion, p. 5)

White again provides nothing in the way of evidence to substantiate this claim. The record as it regards the circumstances surrounding White's incriminating statements to the police all tend to support the conclusion that there was no coercion involved, and that White simply and voluntarily confessed. In this situation, even evidence that he did not, would not be relevant as White has both waived his right to challenge his conviction in a §2255 Motion, and his plea of

guilty as a matter of law has extinguished his ability to challenge the conviction on constitutional grounds. (See discussion at Part B. above).

### D.

In ground four White claims that he received ineffective assistance of counsel, namely:

> Denial of assistance of counsel with coerced statements, denial of effective assistance of counsel with a federal attorney from the bar of the state of Missouri with violation of due process.

(§2255 Motion, p. 6)

In order to prevail on a theory of ineffective assistance of counsel, the movant must demonstrate two separate things; that counsel's representation fell below an objective standard of reasonableness (was constitutionally deficient), and secondly that counsel's deficient performance materially and adversely prejudiced the outcome of the case. *Furnish v. United States of America*, 252 F.3d 950, 951 (8th Cir. 2001). While counsel has a duty to make reasonable investigations and decisions "in determining whether counsel's performance was deficient, the court should 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.' " *Collins v. Dormire*, 240 F.3d 724, 727 (8th Cir. 2001) (*citing, Strickland,* 466 U.S. at 689).

In order to prove that counsel's error was prejudicial, Movant must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability has been described as "a probability sufficient to undermine confidence in the outcome." *Id*. The reviewing court, however, need not address the issue of counsel's performance if it determines that the movant "suffered no prejudice from the alleged ineffectiveness." *Pryor v. Norris*, 103

F.3d 710, 712 (8th Cir. 1997).

White's contention in ground four seems to be again centered in the fact that he intentionally overdosed on pain killers immediately prior to his incriminating interview with the police. As set out above, absolutely nothing in the facts suggests that White's statements were coerced. As a preliminary matter, White consumed an excessive amount of pain killers prior to the officers making contact with him, and not as a result of anything the officers did. The officers were clearly unaware that he had even done so until the interview was over. Coercion requires a compulsion to do (or to not do) a particular thing, backed by force or a threat of force. Had the officers held White down and administered the drugs, or had they refused to help him obtain medical treatment until he confessed, those actions would constitute coercion. Here, White reportedly consumed an overdose amount of drugs without the police even knowing about what he had done, and White makes no allegation that they refused to help him until he confessed.

Even assuming for the sake of argument, that unknown to the officers, White was under the influence of the painkillers during the period of time in which he confessed, it would still not result in suppression, because the record is clear that White was not in police custody at the time of the statement. (PSR, ¶ 10 and TRS, p. 9) White fails to understand the difference between an issue of admissibility of a statement and an issue of how much weight should be given to the statement, because of the circumstances under which it was made. White's remedy in this case would have been to present evidence at trial that the statement was unreliable due to the effects of the drugs and should not be believed by the jury. Given the lack of evidence that White was impaired and the nature of the details that he provided to the police in his confession, there is

little likelihood that a jury would have chosen to disregard the evidence, particularly White's admission. White was very specific about the crime charged, such as the search terms (i.e. "preteen porn sites" and "lolita sites") he used to find the images, the file sharing program he used to download the images (Frostwire), and his statement that he had looked at 200 to 300 pictures of ten to eleven year old girls having sex. (TRS, p. 9; see also, PSR ¶10) White's claim of ineffective assistance of counsel also flies in the face of what he has previously stated about his counsel's performance under oath. In the written plea stipulation White agreed that:

> The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

(Plea Stip ¶ 8)

Likewise at the plea colloquy, the Court specifically inquired of White regarding his counsel's performance.

> The Court: Are you satisfied with the way he's handled your case?
>
> White: Yes.
>
> The Court: Has he investigated the case to your satisfaction?
>
> White: Yes.
>
> The Court: And no gripes or complaint whatsoever?
>
> White: No.

(TRS, pp. 3-4)

Additionally, White conveniently ignores the fact that his attorney succeeded in obtaining on his behalf what would be a valuable concession in his case, the government's agreement to not bring additional charges against him (Plea Stip, ¶ 2A), which could have included receipt charges (i.e. downloading the child pornography images on the computer). Receipt of child pornography has a penalty range that is double the exposure for possession of child pornography--twenty years.

Basically, White has presented no evidence or documentation that would tend to indicate that his attorney's performance was constitutionally deficient, or that it materially and adversely prejudiced the outcome of his case within the meaning of *Furnish*, 252 F.3d 950, 951 (8th Cir. 2001). Whites claim of ineffective assistance of counsel is without merit and shall be dismissed without the necessity of an evidentiary hearing.

E.

White has also submitted two additional documents with his §2255 Motion. The first document (Document 3) is entitled "These are the facts of this CASE" and contains such statements as "I was not in possession of a computer, I do not own one", "On the dates that Linda Helm (White's mother) says it happened on I was staying with my sister" and "This is not the first time Linda Helm has fabricated a story to gain custody of a child." A second document (Document 3-1) purports to be a letter from White's sister Sandy Pettis, wherein she expresses her opinion that White has been "falsely accused" and that it is their mother who should be in jail, and not White.

White's unsworn statement of "facts" is interesting for several reasons, not the least of which is because while it suggests that he is innocent of the offense to which he pleaded guilty, it

does not actually come out and state that to be the case. White merely states things that have a ring of innocence about them, like that he did not "own" a computer, or that he was "cage fighting" at St. Robert, Missouri on the 16th of August in 2008. (Document 3, p.1) These are largely things that even if true do not have any effect upon the issue of White's guilt or innocence. For instance, White's claim that he did not own the computer wherein the pornographic images were located is substantiated by the record. The facts of the case are that White's mother located the pornography on a computer that belonged to her, but was also used by White. (PSR, ¶¶ 7-8) White, like many defendants in this sort of situation is obviously confused by the related concepts of ownership and possession. While ownership of the computer might have been a relevant issue at a jury trial for the purpose of showing a lack of access, it is in no wise an element of (nor a defense to) the crime of possession of child pornography.

White's biggest problem is that he already admitted under oath that he is guilty of the offense to which he has pled guilty. The plea stipulation that he entered into sets out in no uncertain terms and in more than one location in the document: "[t]he defendant acknowledges being guilty of the crime to which a plea is being entered" (Plea Stip, ¶ 2.C.(2)), "[t]he defendant admits that he did commit each and every act charged in Count I of the Indictment" (Plea Stip, ¶4), "[t]he defendant further acknowledges that this guilty plea is made of the defendant's own free will because the defendant is, in fact, guilty of the conduct specified..." (Plea Stip, ¶11). Likewise, White confirmed under oath at the time of the plea that he was in fact guilty.

The Court: Are you pleading guilty because you are guilty?

White: Yes.

(TRS, p. 11)

In order to establish actual innocence, White must first overcome the fact that he pled guilty. White makes generalized allegations that he was coerced, but provides no facts that if believed would indicate that he did not enter a voluntary and intelligent plea of guilty. White does not even offer a plausible explanation for the reason that he pled guilty to a crime he now infers that he is innocent of committing. Secondly, White cannot show that in light of all the evidence, that it is more likely than not that no reasonable juror would have convicted him. *See*, *Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002).

As such, these claims shall also be disregarded by the Court, and an evidentiary hearing is not necessary herein.

IV.

For the foregoing reasons, White's § 2255 motion is **DENIED**.

**SO ORDERED** this 27th day of October, 2011.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE